IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

       v.                                                          24-CR-108-JLS

HENRY FORD,

            Defendant.

## GOVERNMENT'S RESPONSE TO DEFENDANT'S
## SENTENCING MEMORANDUM

**THE UNITED STATES OF AMERICA**, through its attorney, Trini E. Ross, United States Attorney for the Western District of New York, Donna M. Duncan, Assistant United States Attorney, of counsel, hereby files its Response to Defendant's Sentencing Memorandum (Dkt. 35 & 37). For reasons which follow, the government respectfully requests that the Court deny the defendant's request for a non-guidelines sentence and apply the proper sentencing guidelines range of 37 to 46 months.

### I.    SENTENCING PROCEDURE

The Supreme Court in <u>United States v. Booker</u>, 543 U.S. 220 (2005), excised Section 3553(b)(1) from the Sentencing Reform Act, which had strictly limited sentencing judges' discretion to the mandatory regime of the Sentencing Guidelines and Guidelines departures. <u>Booker</u>, 543 U.S. at 234, 236. Today, after considering the Guidelines and all the applicable purposes of sentencing in Section 3553(a) of Title 18, a sentencing judge is required to decide

whether to impose a Guidelines or non-Guidelines sentence.  United States v. Crosby, 397 F.3d 103, 113 (2d Cir. 2005).

Title 18, United States Code, Section 3553(a) requires that this Court "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)]."  In determining the sentence, this Court must consider the following:

1. the nature and circumstances of the offense and the history and characteristics of the defendant;

2. the need for the sentence imposed –

   a. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   b. to afford adequate deterrence to criminal conduct;

   c. to protect the public from further crimes of the defendant; and

   d. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3. the kinds of sentences available;

4. the kinds of sentence and the sentencing range established for –

   a. the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –

      i. issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

      ii. that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

b. in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

5. any pertinent policy statement –

a. issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

b. that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

6. the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7. the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In executing these statutory responsibilities, the Court must first correctly calculate the applicable Guidelines range. Gall v. United States, 552 U.S. 38, 128 S. Ct. 586, 596 (2007). This range is "the starting point and the initial benchmark." Id. As the Second Circuit held, "[t]he Guidelines range . . . represents the Sentencing Commission's considered opinion about what the sentence should be in an 'ordinary' case, and therefore serves as the district court's 'starting point' in selecting a sentence. The § 3553(a) factors, in turn, provide the sentencing judge with a set of criteria for potential variances, based on 'the nature and circumstances of the offense and the history and characteristics of the defendant.'" United

States v. Dorvee, 616 F.3d 174, 182 (2d Cir. 2010). Although this Court must treat the Guidelines as advisory, United States v. Ratoballi, 452 F.3d 127, 131-32 (2d Cir. 2006), an error in determining the applicable Guideline range or the availability of departure authority nonetheless would be the type of procedural error that could render a sentence unreasonable on appellate review. United States v. Selioutsky, 409 F.3d 114, 118 (2d Cir. 2005); United States v. Cavera, 550 F.3d 180, 190 (2d Cir. 2008) (en banc) (a district court commits procedural error where it fails to calculate the Guidelines range, makes a mistake in its Guidelines calculation, or treats the Guidelines as mandatory).

While this Court "does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply," Rita v. United States, 551 U.S. 338, 127 S. Ct. 2456, 2465 (2007), neither are sentencing judges "free to ignore the Guidelines, or to treat them merely as a 'body of casual advice.'" Cavera, 550 F.3d at 189, quoting United States v. Crosby, 397 F.3d 103, 113 (2d Cir. 2005); see also United States v. Jones, 531 F.3d 163, 174 (2d Cir. 2008) ("respectful consideration of the Guidelines . . . necessarily channels district court sentencing discretion"). Further, the Second Circuit has observed that "in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be [upheld as] reasonable in the particular circumstances." United States v. Fernandez, 443 F.3d 19, 27 (2d Cir. 2006). See also United States v. Eberhard, 525 F.3d 175, 179 (2d Cir. 2008).

Next, after giving the parties an opportunity to argue for whatever sentence they deem appropriate (consistent with any limitations imposed by the plea agreement), this Court must then "consider all the § 3553(a) factors to determine whether they support the sentence requested by a party." Gall, 128 S. Ct. at 596. In determining whether the § 3553(a) factors support the requested sentence, the Court "must make an individualized assessment based on the facts presented." Id., at 597. In that regard, "[n]o limitation shall be placed on the information concerning the background, character and conduct of a person convicted of an offense which a court . . . may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. See Cavera, 550 F.3d at 190-91. If a non-Guidelines sentence is warranted, the Court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Gall, 128 S. Ct. at 597.

After settling on the appropriate sentence, the Court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." Id., citing Rita, 127 S. Ct. at 2456. Although this Court need not engage in "robotic incantations" with respect to its consideration of the § 3553(a) factors, Fernandez, 443 F.3d at 30, "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority." Rita, 127 S. Ct. at 2468. Further, "a district court imposing a non-Guidelines sentence . . . should say why she is doing so, bearing in mind . . . that 'a major departure [from the Guidelines] should be supported by a more significant

justification than a minor one.'" Cavera, 550 F.3d at 193 (quoting Gall, 128 S. Ct. at 197 (ellipses added, brackets in original)).

## II.     ARGUMENT

The defendant's request for a below guidelines sentence is not sufficient to comply with the purposes of 18 U.S.C. § 3553(a). The defendant errs in two ways: 1) he improperly dismisses the stolen gun enhancement, and 2) he minimizes the severity of the history and characteristics of the defendant, especially as they relate to the charge before the Court.

### A.     The Factors Under § 3553(a) Support a Guidelines Sentence

#### a.     The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

Under 18 U.S.C. § 3553(a)(1)(A), the Court should consider how the sentence fashioned reflects not only the nature and circumstances of the offense itself but also the history and characteristics of the person. In the instant case, the concern over the defendant's possession of firearms cannot be underemphasized.

The defendant is not allowed to possess firearms due to a prior felony offense. Specifically, on or about October 15, 2008, the defendant plead guilty to two counts of Robbery, 1st Degree. As outlined in the PSR, on April 29, 2007, the defendant entered a market with two accomplices to commit a robbery. All three of them were armed. The defendant threatened the employees and forced them to the ground. One of the victims threw bottles at the defendant and he shot at the victim. The defendant fled the store with a cash register while his accomplices forcibly stole money from the victims. Later that night

the defendant and his accomplices robbed a restaurant where they also displayed firearms and forced victims to the floor. (Dkt. 30 at 9).

This isn't a case where the defendant is prohibited from possessing firearms because he committed a grand larceny or criminal mischief, the defendant committed a gun involved violent felony offense that almost certainly altered the lives of his victims and left them with lifelong trauma. The defendant was released to parole supervision on September 26, 2022, less than two years before being found in possession of two firearms. During the search warrant executed on April 5, 2024, the defendant was located in an idling car and the Ruger handgun was found on his person and a Radical Firearms RF-15 in his bedroom.

The defendant argues that he should receive a break from the court and that the enhancement under U.S.S.G. § 2K2.1(b)(4)(A) for stolen firearms should not be applied. This is credit that the defendant has not earned. He may not have asked if the guns were stolen, but individuals engaged in illicit transactions typically aren't going to ask questions that add to their guilt. As conceded by the defendant, the U.S.S.G. considered the argument and that a defendant may not know firearms were stolen and discounted it.

Notably, the Second Circuit also disagrees with the defendant's argument that the enhancement should not be applied.

> [T]he strict liability nature of the Guideline may produce a positive deterrent effect and assist in achieving the laudable and legitimate governmental interest in reducing the illegal possession of firearms. As the government points out, "as criminals…learn that there is additional punishment for possessing a stolen gun, regardless of whether they knew the gun was stolen, they will be further deterred from possessing *any* gun."

United States v. Thomas, 628 F.3d 64, 70 (2d Cir. 2010). There is nothing about the defendant's circumstances extraordinary enough to override the stolen firearm enhancement and it should be considered as part of the defendant's guidelines.

      **b.**      **The Need to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense**

Under 18 U.S.C. § 3553(a)(2)(A), the Court should consider how the sentence fashioned reflects the seriousness of the offense. In other words, this subsection is designed to ensure that the "punishment fits the crime." The concern from the prior section regarding the defendant's criminal history and continued possession of firearms is also a significant factor heightening the seriousness of the crime and accordingly the need for a just punishment in this case.

It is also important to consider where the defendant was in the chain of events. While he may not have stolen the guns himself, by illegally obtaining the firearms, he is encouraging the illicit market and increasing the likelihood that there will be more theft victims. If the defendant obtained the firearms to sell them to a third party, there is an extremely high likelihood that the third party is also someone prohibited from legally possessing firearms. Through his behavior, the defendant would be recklessly disregarding all community safeguards to prevent firearms from getting into the hands of individuals seeking to cause harm. The defendant's behavior puts our entire community at risk and a guidelines sentence provides just punishment for this offense.

### c. The Need to Protect the Public from Further Crimes of the Defendant

While the defendant argues that the first fifteen months after his release from prison were the best of his life, this is a relatively small timeframe in the scheme of the defendant's life. The government is not unsympathetic to the medical challenges faced by the defendant after his accident; however, the defendant is a 37-year-old man, who spent most of his adult life in prison after committing heinous acts of violence. The PSR outlines fifteen disciplinary incidents that the defendant accumulated during his time in prison. As recently as August of 2020, the defendant was convicted of Promoting Contraband in Prison, 2nd degree (misd). For an incident where he was found in possession of razor blades and approximately 29 grams of synthetic marijuana. (Dkt. 30 at 9-10).

### B. The Defendant Cannot Justify a Non-Guidelines Sentence

As defense counsel thoroughly outlines in the defendant's sentencing memorandum, the defendant's initial attempts to assimilate into community life post-imprisonment were laudable. It is clear that the defendant faced some unfortunate and devastating medical challenges while on parole, but within a very short timeframe the defendant was back to committing another gun related crime. The seriousness of the offense, especially in light of the defendant history and characteristics, should not be minimized or discarded due to the challenges faced by the defendant.

### III. CONCLUSION

For the above reasons, the government respectfully requests that the Court impose a sentence within the guidelines range.

DATED: Buffalo, New York, February 12, 2025.

TRINI E. ROSS
United States Attorney

BY: s/DONNA M. DUNCAN
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York  14202
716/843-5819
Donna.Duncan@usdoj.gov